UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTHA WOOD, o.b.o B.W., a
Minor,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

Case No. 20-10337

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 19)**

      Plaintiff Martha Wood, who is the mother of B.W., a minor child, brings this

action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant

Commissioner of Social Security ("Commissioner") denying her application for

supplemental security income childhood disability benefits.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-

motion for summary judgment (ECF No. 19), and the administrative record (ECF

No. 10).

      For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's

motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner's decision.

## I. DISCUSSION

### A. Background and Administrative History

Plaintiff filed an application for supplemental security income childhood disability benefits on June 20, 2016, on behalf of her minor child, B.W., alleging disability beginning on April 25, 2016. (ECF No. 10, PageID.39). B.W. was born on December 30, 2008. Plaintiff alleges B.W.'s disabling condition is a learning disability. (*Id.* at PageID.192). The application was denied at the initial level on January 13, 2017. (*Id.* at PageID.39).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at PageID.123-24). On September 14, 2018, ALJ Laura Chess held a video hearing, at which Plaintiff testified and B.W. appeared. (*Id.* at PageID.65-91). On January 2, 2019, ALJ Chess issued an opinion, which determined that B.W. was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.39-58).

Subsequently, Plaintiff submitted a request for review of the hearing decision. (*Id.* at PageID.170-73). On December 13, 2019, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.30-34). Thus, ALJ Chess' decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 10, 2020.

**B.     The Administrative Decision**

At Step I of the three-step sequential evaluation process, the ALJ found that B.W. had never engaged in substantial gainful activity.  (*Id.* at PageID.42).   At Step II, the ALJ found B.W. had a speech-language impairment, hearing loss, learning disorder, and anxiety disorder, which she found to be severe impairments that caused more than minimal functional limitations.  (*Id.* at PageID.42-43).  At Step III, the ALJ found that B.W. did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings.  (*Id.* at PageID.43-57).  In denying the claim, the ALJ found that B.W. did not meet or equal Listing 112.10 or 2.10 (Hearing Loss Not Treated with Cochlear Implantation), Listing 111.09 (Communication Impairment), Listing 112.06 (Anxiety and Obsessive-Compulsive Disorders), and Listings 112.11 and 12.11 (Neurodevelopmental Disorders).  The ALJ went on to evaluate B.W.'s degree of limitation in each of the six functional equivalence domains and concluded that she had a "marked" limitation in the domain of acquiring or using information, but no marked or extreme limitations in the other five broad functional domains and thus did not functionally equal a listed impairment.  The ALJ thus determined that B.W. had not been under a disability since June 20, 2016, the date the application was filed.  (*Id.* at PageID.58).

### C.      Framework for Childhood Disability Benefits

A child will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration ("SSA") regulations prescribe a three-step sequential evaluation process:

> 1.  A child will be found "not disabled" if she engages in substantial gainful activity.
>
> 2.  A child will be found "not disabled" if she does not have a severe impairment or combination of impairments.
>
> 3.  A child will be found "disabled" if she has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment.  20 C.F.R. § 416.926a(a).  The SSA will consider how a child functions in six domains:

> 1.      Acquiring and using information;
>
> 2.      Attending and completing tasks;
>
> 3.      Interacting and relating with others;

4.      Moving about and manipulating objects;

5.      Caring for yourself; and

6.      Health and physical-being.

20 C.F.R. § 416.926a(b)(1).  If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing and the child will be found disabled.  20 C.F.R. § 416.926a(d).

### D.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **E.**    **Analysis**

        1.    Meet or Equal Listing 112.11

The dispute on appeal is limited to the ALJ's conclusions that B.W.'s conditions do not meet or medically equal listing 112.11 and do not functionally equal the listing.  Plaintiff's first argument is the ALJ did not explain her "meets or medically equals" analysis of the listing and the evidence demonstrates B.W. meets or equals the listing.  (ECF No. 17, PageID.416-23).

Listing 112.11, Neurodevelopmental Disorders for children age 3 to attainment of age 18, will be met if the following criteria are satisfied, limited to those subsections identified in Plaintiff's argument:

> A. Medical documentation of the requirements of . . . :
>
> 2. Significant difficulties learning and using academic skills;
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
>
> 1. Understand, remember, or apply information (see 112.00E1).
>
> 3. Concentrate, persist, or maintain pace (see 112.00E3).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  A marked limitation is one that interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A marked limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  *Id.*  An extreme

limitation is one that interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(i).  An extreme limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean.  20 C.F.R. § 416.926a(e)(3(iii).

Plaintiff argues the ALJ erred in her assessment of Listing 112.11. Specifically, she maintains the ALJ's discussion of the listing was cursory, only reciting "the possible ways to meet the Listed Impairment."  (ECF No. 17, PageID.416-18).  Plaintiff continues that the evidence regarding B.W.'s functioning in school satisfies one of the paragraph A criteria—significant difficulties learning and using academic skills—and demonstrates she has an extreme limitation in one or marked limitation in both of the following paragraph B criteria: understanding, remembering, or applying information, and concentrate, persist, or maintain pace of the paragraph B criteria.  (*Id.* at PageID.418-23).

In response, the Commissioner argues the ALJ's decision regarding paragraph B of Listing 112.11 is supported by substantial evidence.  First, the Commissioner argues the decision is directly supported by state agency medical consultant, Dr. Krohn, in his reviewing opinion.  Further, the Commissioner contends that although Dr. Krohn analyzed the paragraph B criteria under a version of the regulations which became ineffective prior to the ALJ's decision, that

analysis is not undermined by the update because the criteria are substantially

similar.  (ECF No. 19, PageID.439-42).  Second, the Commissioner maintains that,

when read as a whole, the ALJ's decision makes clear the reasons why she found

B.W. did not meet or medically equal the paragraph B criteria.  (*Id.* at PageID.441-

44).  The Commissioner also argues additional evidence not cited by the ALJ

supports the decision.  (*Id.* at PageID.445-46).

Turning to the ALJ's decision, the entirety of the Step Three discussion

relevant to Listing 112.11 is as follows:

> Although the claimant has impairments that are
> considered to be "severe," the claimant's impairments,
> singly or in combination, do not meet or equal the
> requirements set forth in the Listing of Impairments.  I
> find that the claimant has marked limitations in
> understanding, remembering, and applying information;
> moderation limitations in interacting with others;
> moderate limitations in concentration, persisting, or
> maintaining pace; and mild limitations in adapting or
> managing oneself.
>
> . . . .
>
> Listings 112.11 and 12.11 (Neurodevelopmental
> Disorders) are not met because the claimant does not
> have the following: A) Medical documentation of the
> requirement of recurrent motor movement or
> vocalization, significant difficulties learning and using
> academic skills, or one of the following: frequent
> distractibility, difficulty sustaining attention, and
> difficulty organizing tasks OR hyperactive and impulsive
> behavior AND B) an extreme limitation or one or marked
> limitation of two of the following areas of mental
> functioning: Understand, remember, or apply

> information; interact with others; concentrate, persist, or
> maintain pace; and adapt or manage oneself.

(ECF No. 10, PageID.43/44) (citations omitted).

The ALJ did not undertake a comparison of the medical and educational evidence related to the paragraph B criteria.[1]  Indeed, the ALJ did not provide any analysis on the paragraph B criteria.  After concluding a recitation of the requirements of the listings' other criteria, and providing the conclusory statement that B.W.'s impairments did not meet the requirements, the ALJ moved on to an analysis of the six domains of functional equivalence.  Therein, the ALJ discussed at some length Plaintiff's and B.W.'s testimony, the opinion evidence, the medical evidence, and the educational evidence.

The bare conclusion on the paragraph B criteria makes judicial review of that decision challenging.  As one judge stated, "[t]he ALJ's discussion of the six domains of functional equivalence does not 'stand in' for the analysis required to find that the claimant did not meet or equal the listings." *Layton ex rel. B.O. v. Colvin*, 2013 WL 5372798, at *8 (E.D. Mich. Sept. 25, 2013) (citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 n. 6 (E.D. Mich. 2012)); *see also*

---

[1] The undersigned limits this analysis to the paragraph B criteria because if B.W.'s impairments do not meet or medically equal paragraph B, she would not be disabled under the listing.

*Dodson v. Colvin*, 2016 WL 541471, at *15 (N.D. Ohio Feb. 11, 2016) (collecting cases).

Nonetheless, "an ALJ's failure to explain how he reached his Step Three meets or equals conclusion can constitute harmless error where the review of the decision as a whole leads to the conclusion that no reasonable fact finder, following the correct procedure could have resolved the factual matter in another manner." *Dodson*, 2016 WL 541471, at *15 (citation omitted). Where "concrete factual and medical evidence" is "apparent in the record" such that a court can discern how the ALJ "would have" reasoned, the outcome should be affirmed. *M.G. v. Comm'r of Soc. Sec.*, 861 F.Supp.2d 846, 861 (E.D. Mich. 2012) (citing *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 656–57 (6th Cir. 2009)). The Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Andrews v. Comm'r of Soc. Sec.*, 2013 WL 2200393, at *12 (E.D. Mich. May 20, 2013) (citing *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (quotation marks and citation omitted)). Further, "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, 2016 WL

943953, at *10 (E.D. Mich. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 931161 (E.D. Mich. Mar. 11, 2016).  The undersigned will therefore proceed with an examination of the administrative record to determine whether the same disability outcome *would have* resulted if the ALJ had compared the evidence to the listings, not whether the same result *could have* been reached.

In this case, the ALJ discussed the medical and educational evidence relevant to the paragraph B criteria throughout the remainder of the decision, including evidence favorable to Plaintiff.  Prior to her discussion of the evidence, the ALJ stated she could not "find the allegations that the claimant is functionally limited to the extent reported to be persuasive because of significant inconsistencies in the record as a whole."  (ECF No. 10, PageID.45).

The undersigned turns to the ALJ's decision as a whole and the record evidence to determine if the ALJ's error can be deemed harmless.

Plaintiff was seen by audiologist Angelique Boerst, M.A., during August 2016.  A recent hearing test administered to B.W. revealed she had normal hearing in the right ear, but mild conductive hearing loss in the left ear.  In light of this diagnosis, Ms. Boerst recommended B.W. be given preferential seating in the classroom, use of hearing assistive technology, and a consultation with a teacher consultant to evaluate the acoustic environment of the classroom.  These

recommendations were given to "make it easier for [B.W.] to hear directions and instruction."  (ECF No. 10, PageID.271).

B.W.'s individualized education program ("IEP") was assessed during or around April 2016 while she was in the first grade.  She was placed in special education for a learning disability in basic reading skills.  (*Id.* at PageID.278).  B.W.'s teacher reported B.W. could understand some of a simple story, but understanding vocabulary was a problem for her, in turn causing problems in reading comprehension.  (*Id.* at PageID.281).  B.W. completed Wechsler Intelligence Scale testing for children, which the school psychologist noted to be an accurate portrayal of B.W.'s abilities.  She scored "average" in verbal comprehension, visual spatial, fluid reasoning, and working memory and "low average" in processing speed and full-scale IQ (score of 87).  Her strength was in working memory.  (*Id.* at PageID.282).  In the Kaufman Test of Educational Achievement, B.W. scored in the low average to average range.  (*Id.* at PageID.282-85).  Another IEP was assessed while B.W. attended third grade during October 2017.  One objective reading test revealed she was reading at the end of first grade level, while another objective test revealed she was reading in the 75th percentile of second grade norms.  (*Id.* at PageID.244).  In general, testing was below average.  With support and accommodations, however, B.W. was successful in math and reading.  (*Id.* at PageID.245).  Her math was improving; she

scored 40% on her first math test, but improved to 80% and 95% on her most recent math quizzes.  (*Id.* at PageID.246).

On October 19, 2016, B.W.'s teachers Ms. Coleman and Ms. Brandle completed a Teacher Questionnaire.  They indicated B.W. spent five hours a day in the special education resource room and one hour in speech/language therapy.  (ECF No. 10, PageID.204).  They rated B.W.'s functioning in areas within specific domains on a five-point scale from "no problem" to "a very serious problem."  In the domain of acquiring and using information, they opined B.W. had "a very serious problem" in the following areas:

- Understanding school and content vocabulary
- Comprehending and doing math problems
- Understanding and participating in class discussions
- Providing organized oral explanation and adequate descriptions
- Expressing ideas in written form
- Learning new material
- Applying problem-solving skills in class discussions

(*Id.* at PageID.207).  They found a "serious problem" in comprehending oral instructions and recalling and applying previously learned material.  In the narrative portion, they reported B.W. needed a lot of assistance throughout the day to participate and accomplish school tasks.  Further, she looked to peers for cues but still struggled to keep up and follow directions.  (*Id.*).

In the domain of attending and completing tasks, they opined B.W. had a serious problem in carrying out multi-step instructions and working at a reasonable pace/finishing on time.  (*Id.* at PageID.208).  B.W. had "an obvious problem" (one level below a "serious problem") in completing work accurately without careless mistakes.  Finally, B.W. had a "slight problem" (less than an "obvious problem") in completing class/homework assignments and "no problem" in the remaining areas such as focusing long enough to finish assigned activity or task, carrying out single-step instructions, and refocusing to task when necessary.  The teachers stated B.W. "doesn't seem to have attention issues.  She struggles with comprehending."  (*Id.*).

The ALJ gave the Teacher Questionnaire "substantial weight" because the teachers had a longitudinal view of B.W.'s progress and their finding that she had the most difficulty in acquiring and using information was supported by the evidence.  (*Id.* at PageID.48).

On December 21, 2016, B.W., then attending second grade, was examined by a State agency speech-language pathologist.  B.W. appeared to understand age level vocabulary related to the standardized test, although at times she required repetition to understand.  She also appeared to understand simple age level concepts such as younger versus older.  (*Id.* at PageID.338).  Testing revealed B.W.'s receptive, expressive, and total language were within age expectation.  (*Id.*

15

at PageID.337-39).  On occasion, B.W. had difficulty sequencing details of a story, but with repetition she was able to get her point across to the examiner.  (*Id.* at PageID.341).  The examiner observed B.W. in a quiet setting; she opined B.W. would likely have difficulty with comprehension in the classroom setting when distractions are present.  (*Id.* at PageID.341-42).

The Commissioner contends the B criteria "analysis" is sufficient, in part, because the ALJ cited State agency consultant David Krohn, M.D.'s opinion in support.  Following a review of the available evidence, which included the Teacher Questionnaire, the speech-language pathology examining report, and the April 2016 IEP but not the October 2017 IEP, on January 13, 2017, Dr. Krohn issued an opinion.  (ECF No. 10, PageID.103-04).  In his opinion he addressed listings 112.02 (Organic Mental Disorders) and 111.09 (Communication Impairment).  He concluded B.W. does not meet, medically equal, or functionally equal the listings. (*Id.* at PageID.106).  The paragraph B criteria are the same for listings 112.02 and 112.11, the listing at issue.  Having concluded B.W.'s impairments did not meet or medically equal listing 112.02, Dr. Krohn necessarily considered the paragraph B criteria of listing 112.02, the same criteria to be considered for listing 112.11.[2]

---

[2] Dr. Krohn reviewed the listings before an update to the regulations became effective. At the time of his review, the paragraph B criteria were slightly different from the version effective on the date of the ALJ's decision.  The undersigned is satisfied, however, that the slight difference in the criteria does not undermine Dr. Krohn's opinion.  *See, e.g.*, *Wicker v. Comm'r of Soc. Sec.*, No. 18-11276, 2020 WL 522003, at *9 n.3 (E.D. Mich. Jan. 10, 2020) ("Although Dr. Balunas used the criteria under the previous rendition of the paragraph B criteria, . . . this

However, like the ALJ, Dr. Krohn did not articulate his findings with regard to the paragraph B criteria; he only provided analysis on the six domains of functional equivalence.  So, while the opinion may support the ultimate conclusion on paragraph B, it does not shed any light on the reasons for that specific conclusion.

A March 2017 Student Study Team referral form indicates B.W.'s attention in all areas was age appropriate, but the academic concerns were in basic reading and reading comprehension.  (*Id.* at PageID.329-30).  B.W. was noted to have complications in many areas such as difficulty staying on topic, difficulty explaining things or re-telling what has been said, difficulty reading irregular sight words, difficulty when reading sentences, and difficulty demonstrating comprehension of sentences or stories.  (*Id.* at PageID.330).

Based on the foregoing, the undersigned concludes that even if the ALJ had made the required findings, she would have found that B.W. has less than a marked impairment in paragraph B criterion "concentrate, persist, or maintain pace."  The clearest indication is derived from B.W.'s teachers' questionnaire—to which the ALJ gave substantial weight—where they indicated B.W. did not have problems with attention or completing class or homework, but rather she had problems with

---

difference does not undermine his findings or the ALJ's reliance on them.") (citing *Carbone v. Saul*, No. 18-cv-10476, 2019 WL 4454453, at *12 (D. Mass. Aug. 29, 2019) ("There are significant areas of overlap between the new and old 'paragraph B' criteria, such that an evaluation under the old criteria would inform and assist in an evaluation under the new criteria.")).

comprehension, and B.W.'s ability to successfully complete various standardized tests with examiners.

The area of understanding, remembering, or applying information is a closer call. The ALJ concluded B.W. had marked impairment in this area. To be found disabled, in light of the conclusion above that B.W. has less than marked impairment in the remaining B criteria, B.W. would need an extreme impairment in this area. The ALJ's discussion of the evidence, largely in the domain of "acquiring and applying information," suggests to the undersigned that had she conducted an analysis of the paragraph B criteria, she would have reached the same conclusion. B.W.'s significant difficulty in reading and reading comprehension is well-documented. Her teachers opined she had a "very serious problem" in multiple areas related to understanding and applying information. Further, B.W. was placed in special education at least from first through third grade and required support and accommodations to be successful in her schoolwork.

Contrarily, however, the evidence may also be viewed as depicting a young student who has limitations, but less than extreme limitations in functioning in school. B.W. was able to understand instructions in the various objective tests she was administered, including intelligence testing. The speech-language pathology examiner found B.W. functioning in the age-appropriate range and able to

understand directions, although sometimes with repetition.  B.W. was improving in

math.  Dr. Krohn reviewed the record, including the Teacher Questionnaire, yet

concluded B.W.'s impairments did not meet or equal a listing with the same

paragraph B criteria as the listing at issue.

Further, the evidence that can be construed as being in Plaintiff's favor does

not necessarily meet the level of "extreme" impairment.  Plaintiff did not provide

authority suggesting the teachers' opinion that B.W. had a "very serious problem"

in multiple "acquiring and applying information" areas equates to a "very serious,"

i.e. extreme, impairment as defined in the regulations.  On the contrary, the

regulations define "extreme" as "the equivalent of the functioning we would expect

to find on standardized testing with scores that are at least three standard deviations

below the mean."  20 C.F.R. § 416.926a(e)(3)(i) and (iii).  B.W.'s average to low

average scores are well above three standard deviations below the mean.

Without question B.W. struggles with language and reading comprehension,

but the evidence does not establish that her impairment in understanding,

remembering, or applying information is "extreme."  The ALJ did not leave

untouched any conflicting evidence.  The ALJ's discussion of the evidence allows

the Court to discern how the ALJ "would have" reasoned had she provided a

fulsome analysis of the paragraph B criteria.

      2.     Functional Equivalence

Related to her first argument, Plaintiff argues B.W. has an "extreme"
impairment in the functional equivalence domain of acquiring and using
information.[3]  She asserts the ALJ lacked substantial evidence for her finding that
B.W. had only marked limitation in this domain.  (ECF No. 17, PageID.424).

The domain of acquiring and using information considers how well the child
acquires or learns information and how well the child uses the information learned.
20 C.F.R. § 416.926a(g).  The regulation provides guidance by age group on how
children should be functioning in this domain:

> (iv) School-age children (age 6 to attainment of age 12).
> When you are old enough to go to elementary and middle
> school, you should be able to learn to read, write, and do
> math, and discuss history and science. You will need to
> use these skills in academic situations to demonstrate
> what you have learned; e.g., by reading about various
> subjects and producing oral and written projects, solving
> mathematical problems, taking achievement tests, doing
> group work, and entering into class discussions. You will
> also need to use these skills in daily living situations at
> home and in the community (e.g., reading street signs,
> telling time, and making change). You should be able to
> use increasingly complex language (vocabulary and
> grammar) to share information and ideas with individuals
> or groups, by asking questions and expressing your own
> ideas, and by understanding and responding to the
> opinions of others.

---

[3] The heading to this argument does not match the substance of the argument.  The
heading reads: "The ALJ erred by not having medical expert testimony relative to whether the
minor child's impairments 'equal' a listed impairment in appendix 1, subpart P, regulations No.
4."  (ECF No. 17, PageID.423).  There is no argument in the brief related to this heading.  To the
extent Plaintiff intended to raise this before the Court, the argument is waived as undeveloped.

*Id.* at § 416.926a(g)(iv). The definition of "extreme" impairment is the same in the meets or equals analysis and functional equivalence analysis.

For the same reasons stated above, the undersigned finds the ALJ's decision on this domain supported by substantial evidence. Namely, B.W. tested in the average to low average range (and thus well above three standard deviations below the mean (*see* ECF No. 19, PageID.452)), her math scores improved as the year progressed, she was successful in school with support and accommodations, the speech-language pathologist found B.W. to be functioning within age expectation, and Dr. Krohn found B.W.'s impairments did not functionally equal a listing (like paragraph B criteria, the six domains are the same in the listing Dr. Krohn analyzed and listing 112.11). The ALJ included a discussion regarding all of the medical and educational evidence and weighed the opinion evidence (a subject on which Plaintiff did not lodge an objection). She adequately explained her reason for finding only marked impairment in this domain.

The Court does not reweigh the evidence to determine whether it would come to a different conclusion. Indeed, even if it would come to a different conclusion, as long as there is substantial evidence in support of the ALJ's decision, the decision will be upheld. That is the case here—the ALJ's decision in this domain is supported by substantial evidence.

**F. Conclusion**

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 13, 2021                          s/Curtis Ivy, Jr.
                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge